IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **AGSOUTH GENETICS, LLC,** and | ) | |
| | ) | |
| **UNIVERSITY OF GEORGIA** | ) | |
| **RESEARCH FOUNDATION, INC** | ) | |
| | ) | |
|     **Plaintiffs** | ) | |
| | ) | |
| | ) | **CIVIL ACTION FILE** |
| | ) | **NO.:** 5:14-CV-404-MTT |
| **vs.** | ) | |
| | ) | |
| | ) | |
| **CHRISTOPHER MARTIN d/b/a** | ) | |
| **MARTIN FARMS and CHRISTOPHER** | ) | |
| **MARTIN, individually** | ) | **JURY DEMAND** |
| | ) | |
|     **Defendants** | ) | |

**COMPLAINT**

**COME NOW** the Plaintiffs, AGSouth Genetics, LLC, (hereinafter referred to as "AGSouth"), and the University of Georgia Research Foundation, Inc. (hereinafter referred to as "UGARF"), by and through their undersigned counsel, and for their Complaint against the Defendants Christopher Martin d/b/a Martin Farms and Christopher Martin, individually (hereinafter referred to as "Defendants"), for unauthorized use of AGSouth's, and UGARF's proprietary wheat variety in violation of AGSouth's and UGARF's rights under the Plant Variety Protection Act, 7 U.S.C. § 2321 *et seq.* (hereinafter referred to as "PVPA") and AGSouth's trademark rights under the Lanham Act, 15 U.S.C. § 1051 *et seq*. AGSouth and UGARF allege as follows:

**JURISDICTION AND VENUE**

    1.    Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, in that one or more of AGSouth's and UGARF's claims arise under the laws of the United States,

as well as 28 U.S.C § 1338, granting district courts original jurisdiction over any civil action regarding the Plant Variety Protection Act and Lanham Act.

2. Venue is proper in this judicial district pursuant to 28 U.S.C § 1391, in that a substantial part of the events giving rise to the claims occurred in Georgia and this division.

## PARTIES

3. Plaintiff, AGSouth, is a corporation organized and existing under the laws of the State of Georgia with its principal place of business at 136 Red Oak Avenue, Albany, Georgia 31708-2246. At all times material herein, AGSouth has been the exclusive licensee of the Plant Variety Protection Certificate rights to the wheat variety known as AGS 2035, which rights have been infringed upon by the Defendant.

4. Plaintiff, UGARF, is a Georgia nonprofit corporation with its main place of doing business located in The Boyd Graduate Studies Research Center, Athens, Georgia 30602-7411. UGARF was established to promote, encourage and aid research at the University of Georgia. At all times material herein, UGARF has been the holder of the Plant Variety Protection Certificate rights to the wheat variety known as AGS 2035 which rights have been infringed upon by the Defendant.

5. Defendants Christopher Martin d/b/a Martin Farms and Christopher Martin, individually are in the agricultural business at 10 Mansfield Drive, Hawkinsville, Georgia 31036. Defendants are engaged in illegal conditioning, production, shipping, selling, storing and offering for sale AGS 2035 wheat seed for propagation and use without permission of the variety owner or licensee. Defendants are not persons who qualify for exceptions set forth at 7 U.S.C. § 2543 and Defendants are subject to the jurisdiction of this Court.

## STATEMENT OF CLAIM
## PLANT VARIETY PROTECTION REGISTRATION

6. All other facts and allegations contained in this Complaint are incorporated herein as if set forth word for word.

7. This action arises partially under the Plant Variety Protection Act (PVPA), 7 U.S.C. § 2321 *et. seq.*, which provides patent like protection to a novel variety of seed. The PVPA states the following:

> 7 U.S.Code 2541
>
> *"(a) Acts constituting infringement*
> *Except as otherwise provided in this subchapter, it shall be an infringement of the rights of the owner of a protected variety to perform without authority, any of the following acts in the United States, or in commerce which can be regulated by Congress or affecting such commerce, prior to expiration of the right to plant variety protection but after either the issue of the certificate or the distribution of a protected plant variety with the notice under section 2567 of this title:*
>
> (1) *sell or market the protected variety, or offer it or expose it for sale, deliver it, ship it, consign it, exchange it, or solicit an offer to buy it, or any other transfer of title or possession of it;*
> (2) *import the variety into, or export it from, the United States;*
> (3) *sexually multiply, or propagate by a tuber or a part of a tuber, the variety as a step in marketing (for growing purposes) the variety;*
> (4) *use the variety in producing (as distinguished from developing) a hybrid or different variety therefrom;*
> (5) *use seed which had been marked "Unauthorized Propagation Prohibited" or "Unauthorized Seed Multiplication Prohibited" or progeny thereof to propagate the variety;*
> (6) *dispense the variety to another, in a form which can be propagated, without notice as to being a protected variety under which it was received;*
> (7) *condition the variety for the purpose of propagation, except to the extent that the conditioning is related to the activities permitted under section 2543 of this title;*
> (8) *stock the variety for any of the purposes referred to in paragraphs (1) through (7);*

>> *(9)    perform any of the foregoing acts even in instances in which the variety is multiplied other than sexually, except in pursuance of a valid United States plant patent; or*
>> *(10)   instigate or actively induce performance of any of the foregoing acts."*

8. All certificates of plant variety protection give the breeder or an assignee the right to exclude others from selling the variety, or offering it for sale, or reproducing it without permission of the owner.

9. Once the plant breeder proves that the newly discovered variety is novel and useful, the breeder will set forth its distinctiveness, uniformity, and stability and a description of the genealogy and breeding procedure used to develop it.

10. Upon meeting all the requirements of the Plant Variety Protection Office of the United States Department of Agriculture, a certificate of protection is issued to the plant breeder or assignee.

11. The owner of the PVPA certificate has the right to control the usage of the invention (seed) for a period of twenty years, 7 U.S.C. § 2483. The owner may license or grant and convey an exclusive right for the use of the protected variety and it is also assignable. See 7 U.S.C. § 2531.

12. AGSouth is in the business of producing, marketing, licensing, and selling protected certified wheat seed nationally. In the course of its business, and only after the investment of substantial time and expense, AGSouth obtained a license giving it exclusive rights to PVPA protected AGS 2035 wheat variety as well as other AGSouth varieties.

13. The purpose of the Plant Variety Protection Act, 7 U.S.C. § 2321 *et. seq.,* is to encourage the development and availability of new and beneficial crop variety [the seed] by legally protecting intellectual property rights in such variety [the seed] for those who breed,

develop, discover, or own these crops, thereby promoting progress in agriculture which is in the public interest.

14. UGARF discovered a new and novel variety of wheat and on December 15, 2009 and thereafter, Plant Variety Protection Certificate Number 200900420 was issued to UGARF pursuant to 7 U.S.C. § 2482 by the United States of America under the seal of the Plant Variety Protection office, for the wheat variety known and identified as AGS 2035. A true and accurate copy of Certificate Number 200900420 and the application is attached to this Complaint as Exhibit A and is incorporated herein by reference.

15. Subsequently, UGARF licensed the Plant Variety Protection Certificate 200900420 to AGSouth. The exclusive license granted to AGSouth is to make, have made, use, sell, and offer for sale the AGS 2035 wheat variety. A true and accurate copy of the AGS 2035 Wheat Cultivar Seed Supply and License Agreement is attached to this Complaint as Exhibit B and is incorporated herein by reference.

16. AGSouth provides stewardship and high quality production farms to develop certified wheat seed by maintaining identity preservation for purity while cleaning, conditioning, bagging, testing, marketing, maintaining adequate inventories and warehousing. AGSouth insures and provides quality assurance, management and labor to accomplish these responsibilities.

17. By virtue of the PVPA Certificate and the above-mentioned license, AGS 2035 wheat variety can be grown, offered for sale, marketed, conditioned, shipped, stocked, exposed for sale or sold only by or with AGSouth's permission and all acts therefrom must be undertaken in accordance with the Plant Variety Protection Act.

18. AGSouth and the seed dealers authorized by AGSouth to sell the AGS 2035 wheat variety provide notice on the seeds' packaging that the AGS 2035 wheat variety is protected by the Plant Variety Protection Act. The AGS 2035 wheat seed variety is processed and sold by AGSouth as a class of certified seed, meaning that before every sale, the seed has to be certified by an approved government or private agency as to variety, germination and purity.

19. At all times relevant herein the PVPA Certificate for the AGS 2035 wheat variety was in full force and effect.

20. At all times relevant herein, Defendants had actual notice and knowledge that the AGS 2035 wheat variety was federally protected by the PVPA.

21. 7 U.S.C. § 2541 of the PVPA provides that it is an infringement of the owner's rights in a protected variety, inter alia, to sell the variety without authorization of the owner or to dispense the variety to another in a form that can be propagated without notice that it is a protected variety. 7 U.S.C. § 2541 also provides that it is an infringement to instigate or induce any act that constitutes an infringement. More specifically, it is infringement to sell or market the protected variety, or offer it or expose it for sale, deliver it, ship it, consign it, exchange it, or solicit an offer to buy it, or any other transfer of title or possession of it; dispense the variety to another, in a form which can be propagated, without notice as to being a protected variety; condition the variety for the purpose of propagation; stock the variety for any of these purposes; instigate or actively induce performance of any of the foregoing acts.

22. The PVPA provides in 7 U.S.C. § 2561 that an owner shall have a remedy by civil action for infringement of plant variety protection and that if the variety is sold under the name of the variety shown in the certificate, there is a prima facie presumption that the seed in the bag or lot is the protected variety. Under 7 U.S.C. § 2562 of the PVPA, a certificate of plant variety

protection is presumed to be valid.

23. 7 U.S.C. § 2563 of the PVPA provides that a court may grant an injunction to prevent violations of rights under the PVPA.  7 U.S.C. § 2564 of the PVPA provides that upon a upon a finding of infringement, the court shall award damages adequate to compensate for the infringement, but in no event less than a reasonable royalty together with interest and costs.  7 U.S.C. § 2564 also provides that the court may increase the damages up to three times the amount determined and, in exceptional cases, the court may award reasonable attorney's fees to the prevailing party.  Further, the Court may use financial expert testimony to determine damages.

24. 7 U.S.C. § 2543 of the PVPA provides a crop exemption for growers and other persons that permits a bona fide sale of a protected variety into normal grain channels (for cookies and flour), but 7 U.S.C. § 2543 does not exempt from PVPA protection the sale of grain of a protected variety for use as seed for reproductive purposes without the authorization of the owner.  7 U.S.C. § 2543 further provides that if a purchaser diverts grain from normal grain channels for use for reproductive purposes, that purchaser is deemed to have notice under 7 U.S.C. § 2567 that its actions constitute an infringement of 7 U.S.C. § 2541 for purposes of a damages action by the owner.

25. Pursuant to 7 U.S.C. § 2563, AGSouth and UGARF are entitled to a permanent injunction according to the principles of equity and upon such terms as the Court may deem reasonable, to prevent Defendant' continued sale of the AGS 2035 wheat variety in bulk or in unmarked bags.  Without such injunction, AGSouth and UGARF will suffer immediate and irreparable harm not otherwise quantifiable in money damages.

**COUNT I**
**DEFENDANT' UNAUTHORIZED USES OF PLAINTIFFS'**
**PVPA PROTECTED WHEAT SEED**

26. All other facts and allegations contained in this Complaint are incorporated herein as if set forth word for word.

27. Defendants violated Plaintiffs' PVPA rights regarding wheat grain Defendants had diverted from normal grain channels through a practice known as "brown bagging", in which a person or entity uses grain grown from protected proprietary seed, usually certified seed, and prepares it for use as planting seed without authorization of the owner and exclusive licensee of the proprietary seed. In some areas of the country, the grain is repackaged in seed bags, often brown, and the infringer markets, offers for sale, conditions, ships, stocks, exposes it for sale and sells the grain under the name of the variety from which the grain was grown. In Georgia, when dealing with seed piracy, whether the unauthorized sale of the grain is in bulk or a brown bag, the overarching practice of selling the harvest of a protected variety without authority of the original variety owner is still understood in the industry as "brown-bagging".

28. Defendants are marketing, offering for sale, stocking, shipping, conditioning, exposing it for sale and selling the "brown-bagged" AGS 2035 wheat seed without the required PVP notice.

29. Defendants are selling the "brown-bagged" AGS 2035 wheat seed at a lower price than authorized dealers, all without the authority of AGSouth and UGARF.

30. Defendants' infringing activities were undertaken with full knowledge and intent and with actual and constructive notice that such activities were in violation of AGSouth's and UGARF's plant variety protection rights, and that AGS 2035 is a federally protected variety.

31. Defendants, while violating the Plaintiffs' PVPA rights in the AGS 2035 wheat seed variety, discussed the variety name, yield and planting issues. Defendants specifically represented that its wheat seed had a "91%-95% germ". Varietal benefits such as germination, yield and seed disease resistance and the like are only relevant for planting seed, not animal feed cookies or flour. Whenever grain, as opposed to seed, is used for its intended purposes for cookies and flour or as animal feed, the germination rate and variety is not material and is never given or asked for. Varietal distinction is only relevant to wheat that is processed and identity preserved for planting seed intended for harvesting grain.

32. AGSouth and UGARF confirmed that Defendants are in fact "brown-bagging" selling and violating Plaintiffs' PVPA rights in the AGS 2035 wheat seed variety that is protected. Further, in this case, Defendants did not attempt to hide the identity of the variety he sold.

33. Defendants have, in the past, obtained certified AGS 2035 with proper authority from authorized dealer(s) having labeling with the PVP notice printed thereon.

34. Neither AGSouth nor UGARF has granted permission or authorized the Defendants to market, offer for sale, stock, ship, condition, expose for sale and/or sell the AGS 2035 wheat variety in this manner.

35. At all times relevant to the claims herein, AGSouth only sold AGS 2035 seed with written notice containing statutorily designated language signifying that the seed was protected under the PVP and that unauthorized propagation or multiplication of the seed was prohibited. AGSouth placed such PVPA notice of protection on all bags of AGS 2035 wheat seed it sold and on notices accompanying all bulk sales of their AGS 2035 wheat seed. In addition, AGSouth also placed PVPA notices on its marketing and promotional materials for the

AGS 2035 seed wheat, 7 U.S.C. § 2567.

36. Defendants resold the AGS 2035 "brown-bagged" wheat seed without notice that the seed was subject to PVPA protection, the identity of the PVPA certificate holder or licensee, or any other restrictions to prevent purchasers of the seed from using the seed to further replicate the seed for seed or grain crop purposes, i.e. reproductive purposes.

37. Upon information and belief, Defendants marketed, offered for sale, stocked, shipped, conditioned, exposed for sale and/or sold a substantial quantity of AGS 2035 for seed purposes over the past several years. Defendants' unrestricted sale of the protected AGS 2035 wheat seed put AGSouth and UGARF at great risk of harm since each 50 lb. brown bag of seed sold by Defendants can be planted, harvested, and replanted to produce over four million fifty-pound bags of seed in just five generations.

38. Defendants' illegal activities in violation of Plaintiffs' PVPA rights placed the reputation of the protected variety at risk because it was sold without the rigorous production standards employed by AGSouth and without the certification by a governmental or private entity.

39. Defendants are deemed under 7 U.S.C. § 2543 of the PVPA to have had notice that his acts in diverting the AGS 2035 wheat from normal grain use for use as wheat seed for reproductive purposes constitutes multiple infringements of AGSouth's and UGARF's rights under the PVPA.

40. Upon information and belief, Defendants knew that the majority of wheat seed sold legitimately in Georgia was subject to PVPA protection, and he had ready access to information as to the PVPA status of the AGS 2035 variety.

41. Upon information and belief, Defendants had actual and constructive notice and

knew the AGS 2035 variety was federally protected by a PVPA certificate (patent-like protection) yet willfully disregarded the law and marketed, offered for sale, stocked, shipped, conditioned, exposed for sale and sold the variety "brown-bagged" and without restriction.

## COUNT II
## DAMAGES FOR INFRINGEMENT OF THE PLANT VARIETY PROTECTION ACT and 7 U.S.C. § 2541(A) OF THE PVPA

42.    All other facts and allegations contained in this Complaint are incorporated herein as if set forth word for word.

43.    Without authorization from AGSouth and/or UGARF, Defendants marketed, offered for sale, stocked, shipped, conditioned, exposed for sale and/or sold the protected AGS 2035 variety which he had diverted from normal grain channels for sale as seed for reproductive purposes or which he had induced or instigated others to divert from normal grain channels.

44.    Prior to Defendants' infringement, Plaintiff AGSouth enjoyed an exclusive license to the AGS 2035 wheat variety. Defendants' illegal actions destroyed the benefits of the exclusive license and what was once a good business plan.

45.    Defendants knowingly marketed, offered for sale, stocked, shipped, conditioned, exposed for sale and/or sold the AGS 2035 wheat seed in brown bags at a substantial discount to what authorized dealers charged for legitimate AGS wheat seed.    Defendants intentionally set their pricing to divert sales from authorized dealers for his own profit and competed with Plaintiffs as a direct competitor.

46.    Defendants knowingly and intentionally placed AGSouth and UGARF at substantial risk of further misuse of its wheat seed by placing the seed in commerce without notice of its protected status.

47.    As the result of Defendants' actions, AGSouth and UGARF have incurred

substantial damages, attorney's fees, and costs and will in the future incur additional costs and damages.

48. Defendants made use of Plaintiffs' product in an unrestricted manner with complete and utter disregard to Plaintiffs' rights in the germplasm.

49. Defendants knew and disregarded the fact that by "brown-bagging" AGS 2035 wheat for reproductive purposes they were violating Plaintiffs' rights under the PVPA.

50. As the result of Defendants' multiple infringements of AGSouth's and UGARF's rights under 7 U.S.C. § 2541 of the PVPA, AGSouth and UGARF have suffered harm for which they are entitled to damages as outlined in 7 U.S.C. § 2564, including without limitation:

    a. Damages adequate to compensate for the infringement(s), but in no event less than a reasonable royalty for the use made of the variety by Defendant, together with interest and costs fixed by the Court. See 7 U.S.C. § 2564(a)

    b. The damages award should be increased up to three times the amount of damages determined. See 7 U.S.C. § 2564(b)

    c. Damage to AGSouth's and UGARF's reputation or the reputation of the AGS 2035 variety which was not produced in accordance with AGSouth's practices and standards and was not certified;

    d. Expenses incurred or reasonably expected to be incurred as a direct result of AGSouth's and UGARF's actions to recover seed or grain grown from Defendant' violation of Plaintiffs' PVPA rights, and/or expenses incurred in identifying and notifying persons who purchased the AGS 2035 variety of seed from the Defendants that such seed was not produced by or in

    accord with the standards of AGSouth and that any grain grown from such seed is protected by the PVPA, cannot be grown for any purpose other than for cookies and flour, and cannot be held out as AGS 2035.

  e. Further, in light of the exceptional circumstances of this case, Plaintiffs are entitled to recover their attorney's fees and costs.

## COUNT III
## INJUNCTION PURSUANT TO 7 U.S.C. § 2563 OF THE PVPA

51. All other facts and allegations contained in this Complaint are incorporated herein as if set forth word for word.

52. AGSouth and UGARF are entitled to injunctive relief pursuant to 7 U.S.C. § 2563 of the PVPA as follows:

  a. Preliminarily enjoining Defendants from marketing, offering for sale, stocking, shipping, conditioning, exposing for sale and/or selling any of AGSouth's and UGARF's protected varieties pending resolution;

  b. Permanently enjoining any further sales or other illegal acts by Defendants of wheat grain grown from AGSouth's and UGARF's PVPA protected AGS 2035 variety, for reproductive purposes;

  c. Requiring the ultimate destruction of all AGS 2035 wheat in Defendants' possession or control to prevent all future illegal harvests from being replanted;

  d. Allowing for immediate access to the facility and the premises, including leased lands, to identify the scope of the infringing conduct at a time when the crops remain in the field, thereafter permitting the crop to grow, harvest, and then store in constructive trust while the suit proceeds;

  e. Requiring the immediate disclosure of the names and addresses of all persons or entities who purchased AGS 2035 wheat seed from Defendants to allow the Plaintiffs to identify the scope of the illegal replanting and allow the Plaintiffs sufficient time to give adequate notice to such unknown individuals of their opportunity to be heard, with the ultimate goal to allow the crop, once identified, to be harvested and sold as flour and cookie wheat; and

  f. Requiring an accounting of all sales for reproductive purposes and profits derived from such sales by Defendants of AGSouth's and UGARF's protected wheat variety, AGS 2035.

## COUNT IV
## STATEMENT OF CLAIM
## LANHAM ACT

53. All other facts and allegations contained in this Complaint are incorporated herein as if set forth word for word.

54. The Lanham Act is federal authority for a trademark infringement claim; however, other conduct is also prohibited under the Lanham Act, such as unfair competition and false marking. In this case, the Plaintiffs assert illegal use of Plaintiff AGSouth's trademark, false marking and unfair competition as authorized by 15 U.S.C. § 1117 and 15 U.S.C. § 1125 of the Lanham Act.

55. AGSouth owns and uses the trademark "AGS" to identify and distinguish its company's wheat seed products from other's products.

56. The trademark AGS is registered on the United States Patent and Trademark Office's Principal Register, thereby giving AGSouth the exclusive right to use the trademark in

commerce in connection with its company's seed products. On March 7, 2006, the trademark AGS Registration Number 3065372 was issued to AGSouth by the United States Patent and Trademark Office, a true and accurate copy of which is attached hereto as Exhibit C and is incorporated herein by reference.

57. AGSouth has not granted permission to Defendants to use the trademark AGS in connection with the sale or marketing AGSouth seed products.

58. Upon information and belief, Defendants are knowingly and intentionally marketing, offering for sale, stocking, shipping, conditioning, exposing for sale and/or selling seed using the federally registered trademark AGS owned by AGSouth and is falsely designating AGS 2035 as "brown-bagged" wheat.

59. Defendants knowingly and intentionally sold the "brown-bagged" wheat designated as AGS 2035 at a substantial discount to what authorized dealers charged.

60. Defendants intentionally set their pricing of the illegal "brown-bagged" wheat to divert sales from Plaintiffs' authorized dealers for Defendants' own profit and competed with Plaintiffs as a direct competitor.

61. By falsely designating the origin of its "brown-bagged" wheat, and by making false and misleading representations of fact in the selling and marketing of its "brown-bagged" wheat, Defendants have violated 15 U.S.C. § 1125.

62. Defendants' use of AGSouth's AGS trademark, Defendants' false designation of AGS 2035 as "brown-bagged" wheat seed or bulk wheat seed, and Defendants' false and misleading description of fact is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with AGSouth, or as to the origin of

"brown-bagged" wheat or as to the sponsorship or approval of Defendants' goods, services, or other commercial activities by AGSouth.

63. Further, Defendants' false designations and misleading descriptions misrepresent the nature, characteristics, qualities, or geographical origin of AGS 2035 wheat.

64. At all times relevant, Defendants had actual notice that "AGS" is AGSouth's federally protected trademark.

## COUNT V
## DAMAGES FOR VIOLATION OF THE LANHAM ACT

65. All other facts and allegations contained in this Complaint are incorporated herein as if set forth word for word.

66. As the result of Defendants' actions, AGSouth and UGARF have incurred substantial damages, attorney's fees, and costs and will in the future incur additional costs and damages.

67. As the result of Defendants' actions, AGSouth and UGARF have suffered harm for which they are entitled to damages, including without limitation:

    a. Pursuant to 15 U.S.C. § 1117 and 15 U.S.C. § 1125, AGSouth is entitled to damages to include Defendants' profits and for damages sustained pursuant to the Lanham Act;

    b. Damages based upon a reasonable royalty or a higher sum adequate to compensate Plaintiffs pursuant to the Lanham Act;

    c. Damage to AGSouth's reputation or the reputation of the AGS brand by the sale of said brand which was not produced in accordance with AGSouth's practices and standards and was not certified and the financial cost of corrective advertising.

      d.    Damages for Plaintiffs' costs to correct and explain to its entire market that Defendants have been selling AGS wheat seed illegally that was not authorized and did not meet Plaintiffs' quality control measures.

      e.    Further, in light of the exceptional circumstances of this case, Plaintiffs are entitled to recover their attorney's fees and costs.

## COUNT VI
## INJUNCTION PURSUANT TO 15 U.S.C. §1116 OF THE LANHAM ACT

68. All other facts and allegations contained in this Complaint are incorporated herein as if set forth word for word.

69. Pursuant to 15 U.S.C § 1116, AGSouth is entitled to a permanent injunction according to the principles of equity and upon such terms as the Court may deem reasonable, to prevent Defendants' continued unauthorized use of their trademark, false designation of origin, false descriptions, and dilution. Without such injunction, AGSouth will suffer irreparable harm.

## TRIAL DESIGNATIONS

70. AGSouth and UGARF seek a jury trial.

## RELIEF DEMANDED

**WHEREFORE**, Plaintiffs pray for relief and judgment as follows:

      a.    Request that service be issued in accordance with the terms of law and Defendants be served and commanded to respond in accordance with the terms of law to this Complaint.

      b.    Award judgment against Defendants as prayed for herein in both damages and equity.

      c.    Award AGSouth's and UGARF's PVPA damages in no event less than a

        reasonable royalty for the use made of the variety by Defendants, together with interest and costs fixed by the Court;

d.    Award AGSouth's Lanham Act damages to include Defendants' profit and a reasonable royalty, or a sum determined by other factors, for damages sustained under the Lanham Act.

e.    Order preliminary and permanent injunctive relief;

    i.    Directing Defendants to make no further sales for reproductive purposes of any seed for which AGSouth and UGARF hold PVP protection;

    ii.    Directing Defendants to identify all fields on which he is cultivating a current wheat crop which will allow AGSouth and UGARF to identify the extent of the infringement. This information must be preserved prior to when the Defendants harvest and permanently remove the harvest, thereby spoliating evidence as to the true extent of infringement; and

    iii.    Account for all sales of all PVPA protected seed of AGSouth and UGARF, including the names and addresses of all purchasers, the quantity so purchased, and the names and addresses of all seed conditioners associated with such seed as well as conspirators;

    iv.    Enjoin Defendants from continued unauthorized use of AGSouth's trademark, false designation of origin, false descriptions, and dilution.

f.    Award prejudgment and post-judgment interest;

g.  Award AGSouth and UGARF its attorneys' fees, costs, and expenses incurred in this action pursuant to the PVPA and the Lanham Act;

h.  Award treble damages to Plaintiffs pursuant to the PVPA and the Lanham Act.

i.  Award such other and further relief as the Court may deem just and proper.

Respectfully submitted this 17th day of November, 2014,

NOLAN LAW GROUP, PLLC

By: /s/ Duff Nolan
Duff Nolan
SCRN: 89125
*Lead Counsel for Plaintiffs, AGSouth Genetics, LLC,
and University of Georgia Research Foundation, Inc.*
411 South Main
Post Office Box 68
Stuttgart, AR 72160
(870) 673-3200 Telephone
(870) 673-6996 FAX
dn@nolanlawgrouppllc.com


JONES, CORK & MILLER, LLP

By: /s/Callie D. Bryan
Callie Dickson Bryan
Georgia Bar Number: 221194
*Local Counsel for Plaintiffs, AGSouth Genetics, LLC,
and University of Georgia Research Foundation, Inc.*
435 2nd Street, Suite 500
Post Office Box 6437
Macon, GA  31208-6437
(478) 745-2821 Telephone
(478) 743-9609 FAX
callie.bryan@jonescork.com

\\EXCALIBUR\Client Files\AGSouth Genetics\4793 Christopher Martin\Pleadings\Christopher Martin Complaint AGS 2035.docx\tdn