*Johnson/1429*
*AGSouth Genetics, 8/31/09 (sf)*

# EXCLUSIVE LICENSE AND SEED SUPPLY AGREEMENT
## AGS 2035 Wheat

This License Agreement is dated August 31, 2009, ("Effective Date") among the UNIVERSITY OF GEORGIA RESEARCH FOUNDATION, a Georgia non-profit corporation ("UGARF"), the GEORGIA SEED DEVELOPMENT COMMISSION, a Georgia statutory corporation created under the Georgia Seed Development Act ("GSDC"), and AGSOUTH GENETICS, LLC, a Georgia limited liability company ("Licensee") (collectively "the Parties").

UGARF owns the intellectual property rights to certain plants created at the University of Georgia, including GA 981622-5E35 "AGS 2035" wheat, which is the subject of this Agreement. GSDC is empowered by state law to receive University of Georgia breeder seed and to produce foundation seed for commercialization.

## 1. DEFINITIONS

1.1. **"Affiliate"** means any corporation or non-corporate entity that controls, is controlled by, or is under common control with Licensee. A corporation or non-corporate entity is to be regarded as in control of a corporation if it owns, or directly or indirectly controls, at least fifty percent (50%) of the voting stock of the other corporation, or (i) in the absence of the ownership of at least fifty percent (50%) of the voting stock of a corporation or (ii) in the case of a non-corporate business entity, or non-profit corporation, if it possesses, directly or indirectly, the power to direct or cause the direction of the management and policies of such corporation or non-corporate entity, as applicable.

1.2. **"Breeder Seed"** means the seed which resulted from the final breeding creating the Licensed Cultivar.

1.3. **"Licensed Certified Seed"** means seed of Licensed Cultivar produced from Registered Seed and in compliance with all certification regulations, including those of the official seed certifying agency of the state in which the seed was grown.

1.4. **"Foundation Seed"** means seed produced from plants grown from Breeder Seed, and any seed reclassified by GSDC as Foundation Seed.

1.5. **"Licensed Territory"** means United States.

1.6. **"Licensee"** means AgSouth Genetics, LLC and its Affiliates.

1.7. **"Licensed Cultivar"** means the wheat cultivar GA 981622-5E35, variety name AGS 2035, developed by Dr. Jerry Johnson at the University of Georgia.

1





1.8. **"PVP"** means UGARF's Application Number 200900420 for a Plant Variety Protection Certificate to the Licensed Cultivar, applied for with the Plant Variety Protection Office, U.S. Department of Agriculture on August 12, 2009, and any Plant Variety Protection Certificate that issues from such application.

1.9. **"Registered Seed"** means seed produced from plants grown from Foundation Seed.

1.10. **"Sell, Sold or Sale"** shall mean the sale, transfer, exchange or other disposition of Licensed Certified seed, whether by gift or otherwise, less usual and customary returns accepted or refunds granted.

1.11. **"Term"** means the length of this Agreement, from the Effective Date to the date of expiration of the PVP or until this Agreement is otherwise terminated.

## 2. LICENSE GRANT

2.1 **Grant.** Subject to the reservations below, UGARF grants to Licensee an exclusive right and license to produce Licensed Certified Seed and Registered Seed from plants grown from Foundation Seed, and to reproduce, stock, import, export, condition for propagation, offer for Sale and Sell Licensed Certified Seed and Registered Seed in the Territory.

2.2 **GSDC License.** UGARF grants to GSDC the exclusive right and license to produce and Sell Foundation Seed to Licensee.

2.3 **Sublicense.** UGARF grants to Licensee the right to grant sublicenses under this Agreement for the production and marketing of Licensed Cultivar provided that Licensee shall remain responsible for the operations of its sublicensees relevant to this Agreement as if such operations were carried out by Licensee, including, but not limited to, the payment of all fees and royalties due under this Agreement. Licensee shall aggressively and diligently pursue the collection of all fees and payments due from its sublicensees.

2.4 **Reservation of Rights.** UGARF retains on its own behalf, for UGA, and for UGA's external research collaborators, the right to grow and to use Licensed Cultivar for breeding, research and educational purposes. All rights not expressly granted to GSDC and Licensee hereunder or reserved to third parties are hereby expressly reserved to UGARF.

2.5 **No Implied License.** The license and rights granted in this Agreement do not confer any rights to Licensee by implication, estoppel, or otherwise as to any matters not specifically identified in this Agreement. The license and rights granted in this Agreement do not confer any rights upon Licensee with respect to the Licensed Cultivar itself, except as expressly granted herein.



2

*Johnson/1429*
*AGSouth Genetics, 8/31/09 (sf)*

2.6  **No Brown Bag Sales.** Licensee or sublicensees shall not purchase for resale, clean, bag or process seed of Licensed Cultivar obtained from third parties, or resell in any form non-certified seed of Licensed Cultivar.

### 3. GSDC SEED SUPPLY AGREEMENT

It is a condition of this License that Licensee obtain Foundation Seed solely from GSDC. GSDC shall provide Licensee with Foundation Seed in such amounts and upon such terms as GSDC and Licensee may determine by separate agreement. GSDC will use reasonable efforts to supply Licensee. UGARF neither represents nor warrants the amounts or delivery dates of Foundation Seed to be delivered to Licensee by GSDC.

### 4. FEES AND ROYALTIES

4.1  **PVP Reimbursement.** Licensee agrees to reimburse UGARF for all out-of-pocket expenses incurred by UGARF in obtaining the PVP. Payment shall be made to UGARF and delivered within thirty (30) days of receipt by Licensee of notice of payment due, to the following address:

> University of Georgia Research Foundation, Inc.
> Attn: Technology Commercialization Office, Director
> 627 Boyd Graduate Studies Research Center
> Athens, GA 30602-7411

4.2  **Royalty Payments.** Licensee shall pay a royalty of $0.80 per 50 lb. unit on all Sales of Licensed Certified Seed and Registered Seed sold by Licensee, its sublicensees and its distributors. A report of production and Sales of Licensed Cultivar, accompanied by the royalty payment due, must be received on or before each February 28 for Sales in the preceding calendar year.

(a) Overdue payments bear interest of two percent per annum above prime, as listed in the February 28 Wall Street Journal, and accrue from the due date until received

(b) Payment made by US mail, wire transfer or commercial carrier to Georgia Seed Development Commission, 2420 South Milledge Avenue, Athens, Georgia 30605.

### 5. LICENSE COMPLIANCE

5.1.  **Field Inspections.** During the Term and for six months following the last Sale permitted under this Agreement, UGARF and GSDC, individually or collectively, may enter on Licensee's and each sublicensee's property to inspect its facilities and fields for the purpose



of verifying compliance with this Agreement. Such inspections shall only be made upon reasonable prior notice and during customary business hours.

5.2. **Royalty Reports and Records.** Licensee and each sublicense shall keep for five years following the close of each calendar year during the Term, true and complete records of its business in sufficient detail that the amounts owed under this Agreement may be verified. Licensee shall deliver to GSDC, with a copy to UGARF, annual written reports by February 28 of the year following the year reported that include the following:

    a. Total number of acres of Licensed Cultivar in production,

    b. Total amounts of Licensed Certified Seed and Registered Seed produced, Sold, and remaining balance on hand at the end of the year, and

    c. The geographical description and GPS coordinates of all fields that were owned, controlled or otherwise under contract to Licensee at any time during the preceding calendar year and that are or have been at any time sown with Licensed Cultivar during that year.

5.3. **Audit.** During the Term and for five years thereafter, Licensee and each sublicensee shall permit UGARF or its representatives to inspect, audit and copy its books and records ("Audit") regarding the sale of Licensed Certified Seed and Registered Seed during normal business hours. Such records include but are not limited to invoice registers and original invoices; product sales analysis reports; price lists, accounting general ledgers; sublicense and distributor agreements; product catalogues and marketing materials; financial statements and income tax returns; sales tax returns; inventory and production records and shipping documents. If Audit discloses a discrepancy of five percent or more between the amount of royalties paid and reported and the amount due for any year, then Licensee shall reimburse UGARF for the total cost of the Audit. Audit results shall be held as confidential information to the extent allowed or required by law. UGARF may keep an archival copy of all documents obtained in the Audit.

## 6. COMMERCIAL DILIGENCE

Licensee shall use commercially reasonable efforts to produce, offer to Sell and Sell Licensed Certified Seed and Registered Seed. Licensee agrees to create, supply, and service in the Licensed Territory as large a market for Licensed Certified Seed and Registered Seed as is reasonably possible. Failure to produce, diligently market and Sell Licensed Certified Seed and Registered Seed is a material breach of this Agreement. Licensee agrees to use reasonable efforts to produce Licensed Certified Seed and Registered Seed and shall meet the commitments



contained in its bid letter of July 6, 2009, which is attached and incorporated as Appendix A. Licensee shall comply with all applicable state and federal regulations governing the production and marketing of commercial grass seed.

## 7. NAMES AND MARKS

7.1. **Use of Names.** Except as licensed and authorized in this Article 7, Licensee shall not use the names, trademarks, designs, logos or markings of UGARF or the University of Georgia, or any adaptation thereof, in connection with any commercial activity without the prior written approval of UGARF or the owner of the mark.

7.2. **Marking.** Licensee and each sublicensee shall place in a conspicuous location on all packages of Licensed Certified Seed and Registered Seed made or sold under this Agreement the following notice: AGS 2035 was created at the University of Georgia and is protected by Plant Variety Protection Certificate granted by the U.S. Department of Agriculture. When the PVP number becomes available, it must be placed on the packaging as well.

## 8. INFRINGEMENT

8.1. **Notice.** Each Party is obligated to inform the others of any suspected infringement of the PVP. UGARF shall have sole authority, which may be delegated to Licensee upon request, to negotiate, file suit, or otherwise resolve the matter without limitation.

8.2. **Suits.** If either UGARF or Licensee files suit, the other hereby consents to be joined as a party if necessary, and shall cooperate in all reasonable respects with the filing party and execute any documents and instruments necessary or appropriate for the filing party to exercise its rights under this Article. The filing party will be responsible for its own expenses. Any financial recoveries will be paid in the following order: (i) to the filing party to reimburse its expenses, (ii) to the other party for its documented and reasonable expenses incurred in assisting the filing party, and (iii) to the parties in equal shares.

## 9. DISCLAIMER OF WARRANTIES AND LIABILITY

9.1. **GSDC Warranty.** GSDC warrants that all Foundation Seed provided to Licensee will be viable and meet the description of Licensed Cultivar contained in the PVP.



Johnson/1429
AGSouth Genetics, 8/31/09 (sf)

9.2. **DISCLAIMER. EXCEPT AS EXPRESSLY PROVIDED IN ARTICLE 9.1, THE INTELLECTUAL PROPERTY RIGHTS AND TANGIBLE MATERIALS PROVIDED HEREIN ARE LICENSED OR DELIVERED "AS IS" WITHOUT WARRANTIES OF ANY KIND. UGARF AND GSDC DISCLAIM ANY AND ALL REPRESENTATIONS AND WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE AND THE WARRANTY OF NON-INFRINGEMENT. LICENSEE ASSUMES THE ENTIRE RISK AND RESPONSIBILITY FOR THE SAFETY, EFFICACY, PERFORMANCE, QUALITY, MARKETABILITY, AND TITLE OF THE PVP, THE LICENSED CULTIVAR AND SEED.**

9.3. **Limitation of Liability.** In no event will UGARF, the Board of Regents of the University System of Georgia, the University of Georgia, GSDC, or their regents, trustees, directors, officers, faculty, students, employees, consultants and agents (collectively "Indemnitees") be responsible or liable for any direct, indirect, special, punitive, incidental or consequential damages or lost profits to Licensee, or any other individual or entity, regardless of legal theory. The above limitations on liability apply even though UGARF or any of Indemnitees may have been advised of the possibility of such damage. Licensee and sublicensees shall not make any statements, representations or warranties, or accept any liabilities or responsibilities whatsoever, with regard to UGARF or Indemnitees that are inconsistent with any disclaimer or limitation included in this agreement.

9.4. **Indemnification.** None of Indemnitees (each an "Indemnified Person") shall have any liability to Licensee or any other person or entity for or on account of (and Licensee agrees and covenants not to sue any Indemnified Person in connection with) any injury, loss, or damage of any kind incurred by Licensee or any other person or entity, whether direct, indirect, special, punitive, incidental, consequential or otherwise arising under any legal theory (and further excluding without limitation any existing or anticipated profits or opportunities for profits lost by Licensee or sublicensee), arising out of or in connection with or resulting from (i) this agreement, the PVP, Licensed Cultivar, any seed, or any activities undertaken hereunder; (ii) the production, use or sale of the Licensed Cultivar seed by Licensee, or (iii) any advertising or other promotional activities with respect to either of the foregoing. Licensee and all sublicensees shall indemnify and hold each Indemnified Person harmless against all claims, demands, losses, damages or penalties (including but not limited to reasonable attorney's fees and expenses at the pretrial, trial or appellate level) made against any Indemnified Person with respect to items (i) through (iii) above, whether or not such claims are groundless or without merit or basis.

6

*Johnson/1429*
*AGSouth Genetics, 8/31/09 (sf)*

## 10. TERMINATION

10.1. **By UGARF.** UGARF may without prejudice to any of its other rights terminate this Agreement if Licensee:

    (a). Fails to make any payment or deliver any report when due, and fails to cure such breach within 30 days after receipt of demand by UGARF or GSDC;

    (b). Materially breaches this Agreement in any other manner and fails to cure such breach within 30 days after receipt of demand by UGARF or GSDC;

    (c). Makes a materially false report or violates the terms of Article 2.6, in which cases termination occurs immediately upon notice.

10.2. **By Licensee.** Licensee may terminate this Agreement without cause upon 90 days written notice.

10.3. **Effect of Termination.** If this Agreement terminates for any reason, on the effective date of termination Licensee and sublicensees shall immediately destroy all fields of Licensed Certified Seed and Registered Seed and immediately notify UGARF and GSDC of such action. Licensee and sublicensees may continue to Sell Licensed Certified Seed and Registered Seed already in inventory for one year after the termination date; provided that all payments and other obligations under this Agreement have been and continue to be satisfied.

10.4. **Survival.** Articles 4, 5, 7.1, 8, and 9 shall survive termination or expiration of this Agreement.

## 11. MEDIATION

Except for the right of either Party to seek court-ordered equitable relief, all claims, disputes or controversies arising under, out of, or in connection with this Agreement that the Parties are unable to resolve shall be submitted to non-binding mediation. The Party raising the dispute shall promptly provide detailed written notice to the other Party. Within 20 business days after the date of notice, the Party against whom the dispute is raised shall select an experienced mediator who has prior judicial experience and no prior or current relationship to either Party. The mediator shall schedule a hearing as soon as practicable. The parties shall participate in good faith and shall share the costs of mediation equally; provided, however, that each party shall pay its own attorneys' fees. If the dispute is not resolved within 15 business days after the hearing, the Parties may pursue their legal remedies.

*Johnson/1429*
*AGSouth Genetics, 8/31/09 (sf)*

## 12. MISCELLANEOUS

12.1. **No Assignment.** The licenses granted herein are personal. Licensee shall not reproduce, distribute, sell, assign or otherwise transfer any rights granted to Licensee herein and any attempted assignment without the consent of UGARF shall be void.

12.2. **Integration.** This document contains the entire understanding of the parties with respect to the subject matter and supersedes any and all prior discussions, courses of conduct or agreements. This Agreement may be amended only by a written instrument executed by the parties. The waiver of an obligation hereunder shall not constitute a waiver of any other obligation, and shall not constitute a permanent waiver of that obligation.

12.3. **Notices.** Unless otherwise provided herein, all notices shall be delivered to the Parties at the addresses in Appendix B. Notice may be given (i) in person, (ii) by certified mail return receipt requested, or (iii) by commercial carrier. Notices are effective upon receipt.

12.4. **Severability.** If any provision of this Agreement is held by any court with jurisdiction to be invalid, illegal or unenforceable, such provision shall be reformed to meet the intent of the parties, and the validity of the remaining provisions shall not be affected.

12.5. **Governing Law.** This Agreement is governed and interpreted under the laws of the State of Georgia applicable to contracts made and to be performed entirely within Georgia by Georgia residents. All actions related to this Agreement shall be litigated in the Superior Courts of Athens-Clarke County, Georgia, or the U.S. District Court for the Middle District of Georgia.

12.6. **Remedies.** UGARF and GSDC may enforce this Agreement by injunction, specific performance, or other equitable relief, without prejudice to any other rights and remedies they may have.

12.7. **Relationship of Parties.** UGARF and Licensee are independent contractors. There is no relationship of principal to agent, master to servant, employer to employee, or franchiser to franchisee. GSDC shall act as agent for UGARF only in the manner specified in this Agreement, and, except as specified herein, has no authority to act on behalf of UGARF or bind UGARF or incur any obligation on UGARF's behalf.

IN WITNESS WHEREOF, the parties hereto have caused this License Agreement to be executed.



8

*Johnson/1429*
*AGSouth Genetics, 8/31/09 (sf)*

**University of Georgia Research
Foundation, Inc.**

By: _____
Name: Dr. David Lee
Title:   Executive Vice President

Date: _____9·24·09_____

**Georgia Seed Development Commission**

By: _____
Name:
Date: _____9 30 09_____

**AgSouth Genetics, LLC**

By: _____James L. Clement_____
Name: Jimmy Clements
Title: _____Managing Partner_____

Date: _____09 - 18 - 09_____


REVIEWED
9-22-09
SF

9

*Johnson/1429*
*AGSouth Genetics, 8/31/09 (sf)*

## Appendix A – LICENSEE COMMERCIAL DILIGENCE



**AGSouthGenetics LL**
P. O. Box 72246
Albany GA 31708-2246
229 881-7455
Fax: 229 883-1506
agsouthgenetics@mchsi.com
www.agsouthgenetics.net

July 06, 2009

**Dr. Mike Garland**
Georgia Seed Development Commission
2420 South Milledge Avenue
Athens, Georgia 30605

Dear Dr. Garland,

AGSouth Genetics is asking for a license to be the exclusive producer and marketer of GA961622-5E35 Wheat Cultivar.

AGSouth Genetics was formed with the objective "to form a production, marketing, and sales company that would be able to provide distribution of Land Grant University Germplasm and Technology to the Southern Farmer".

AGSouth Genetics is marketing 8 proprietary wheat Cultivars in the marketing area of the Southeast and Mid-South. The member companies of AGSouth will use this wheat Cultivar to increase our diversity in the area.

Wheat production and conditioning will be contracted with selected certified seed growers in Georgia, South Carolina, and Arkansas. Members of AGSouth will be our prime source of production contracts as long as quality and cost are acceptable. We will produce seed under the respective state seed certification schemes and quality standards. These will be our minimum standards. Additional quality requirements will be established to meet market demand.

10

*Johnson/1429*
*AGSouth Genetics, 8/31/09 (sf)*

AGSouth proposes a royalty fee of $0.80 per unit on all sales of commercial seed (certified class) and sales of seed stock (registered class). Below are sales projections for the first three years of Cultivar listed above. The current supply of Foundation stock (5E35) will be planted this year. (2009)

| Year | Registered Units | Certified Units | Total |
|------|------------------|-----------------|---------|
| 2010 | 2,000 | 50,000+ | 52,000 |
| 2011 | 2,000 | 50,000+ | 52,000+ |
| 2012 | 2,000 | 50,000+ | 52,000+ |

The numbers above can be greatly increased or decreased as the market place accepts this new wheat cultivar. Therefore projections for year 2011 will mirror the performance of the cultivar and wheat acres planted in 2010.

AGSouth Genetics' distribution capabilities are a strong advantage to our sales. The distributor members have a sales force that will be earning incentives to sell the AGS brand. The market awareness of AGSouth Genetics has grown with the release of each new variety and this new wheat will continue that tradition.

AGSouth Genetics was founded on one very basic concept. "Select the best possible wheat and soybean varieties and then put the production into the hands of seedsmen who know how to produce high quality seed."

Respectfully submitted,


Jimmy Clements



*Johnson/1429*
*AGSouth Genetics, 8/31/09 (sf)*

## APPENDIX B - NOTICES

1.  UGARF:              Director, Technology Commercialization Office
                        University of Georgia Research Foundation, Inc.
                        627 Boyd Graduate Studies Research Center
                        Athens, Georgia  30602-7411

2.  LICENSEE:           AGSouth Genetics
                        P.O. Box 72246
                        Albany, GA  31708-2246

3.  GSDC:               Director, Georgia Seed Development Commission
                        2420 South Milledge Ave.
                        Athens, GA  30605

